MARDEL S. and DONALD D. BENTS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bents v. Commissioner
Docket No. 5012-89
United States Tax Court
T.C. Memo 1990-487; 1990 Tax Ct. Memo LEXIS 535; 60 T.C.M. (CCH) 720; T.C.M. (RIA) 90487; September 11, 1990, Filed Decision will be entered under Rule 155. Neal J. Shapiro, for the petitioners. John C. Schmittdiel, for the respondent. FAY, Judge. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Additions to Tax, Section
Year
Deficiency
6653(a)(1) [1]
6653(a)(2)
6661
1981
$ 73,586.00
$ 3,679.30 *
--
1982
10,082.00
504.10 *
$ 2,521.00
*536 All issues relating to the underlying deficiencies in tax have been disposed of by agreement. The issues remaining for decision are: (1) whether petitioner Mardel S. Bents (Mrs. Bents) is an innocent spouse within the meaning of section 6013(e); and (2) if not, whether Mrs. Bents is subject to the addition to tax for negligence under section 6653(a)(1) and (2). We find Mrs. Bents is not an innocent spouse within the meaning of section 6013(e). We further find Mrs. Bents is subject to the addition to tax for negligence under sections 6653(a)(1) and 6653(a)(2) as determined by respondent. FINDINGS OF FACT Some of the facts have been stipulated. The Stipulation of Facts, Supplemental Stipulation of Facts, and exhibits thereto are *537 incorporated by reference. Petitioners, Donald D. Bents (Mr. Bents) and Mrs. Bents, are husband and wife. Petitioners filed joint Federal income tax returns for the years in dispute. At the time the petition in this case was filed petitioners resided in Lake George, Minnesota. Mrs. Bents graduated from high school in Grove City, Minnesota in 1954. From 1954 until 1955, Mrs. Bents attended a one-year program in secretarial and bookkeeping skills at the Minnesota School of Business in St. Paul. Mrs. Bents met Mr. Bents in approximately 1956, and they were married in 1958. Mrs. Bents began working for Westway Trading Company (Westway) in Minneapolis, Minnesota, in 1960. Mr. Bents began working for Westway in Minneapolis, Minnesota, in 1961. During their employment with Westway petitioners held various positions in the company. Mrs. Bents started with Westway as secretary to an executive vice president and worked her way up through Westway to become manager of its beet pulp department in approximately 1976, with substantial responsibilities for the sale and transportation of one of Westway's main commodities. Mr. Bents started with Westway as a salesman and worked his way up *538 to become manager of Westway's terminal operations. Although they worked in the same office, Mr. and Mrs. Bents were each involved in separate functions of the company and were never in a position of authority over one another with respect to the work they did for Westway. In 1978 Mr. Bents devised a scheme to defraud his employer. In his position as a manager of Westway, one of Mr. Bents' responsibilities was to approve the payment of invoices for goods or services provided to and purchased by Westway. Under his fraudulent scheme, Mr. Bents arranged for several individuals to act as the vendor of goods or services and to present to Westway invoices which were completely false, which overstated the amount actually due from Westway, or which were for goods or services provided Mr. Bents personally. Where the invoices were false or inflated, Mr. Bents approved Westway's payment of the fraudulent invoices and forwarded them to Westway's home office in New Jersey. At the home office, a check was written and sent to the fraudulent vendor. The fraudulent vendor retained a portion of Westway's payment and sent Mr. Bents a check for his share of the proceeds of their illegal scheme. *539 Where the invoices were not false or inflated but were for equipment and other merchandise actually provided by the vendor, Mr. Bents approved Westway's payment of the invoice but instructed the vendor to deliver the goods directly to Mr. Bents rather than Westway. This equipment and merchandise embezzled by Mr. Bents was used by Mr. Bents himself, or sold through a business petitioners owned and operated, Grove City Furniture (GCF). GCF was located in Grove City, Minnesota, which is approximately 70 miles from where petitioners lived in Minneapolis during the years in question. Petitioners maintained a checking account for GCF (the GCF Account) over which Mrs. Bents had signatory authority during the years in issue. When the fraudulent vendors sent Mr. Bents a check for his share of the embezzled funds, those checks were always mailed to Mr. Bents at GCF's address and deposited into the GCF Account. The deposits of Mr. Bents' embezzlement proceeds made to the GCF Account during the years in issue were as follows: Date
Amount
02/20/81
$ 1,464.79 04/28/81
4,340.00 05/09/81
1,679.00 05/30/81
1,300.00 06/03/81
4,080.00 07/02/81
3,600.00 07/25/81
500.00 08/06/81
9,000.00 08/24/81
6,100.00 09/04/81
4,800.00 09/04/81
2,000.00 09/22/81
2,505.80 09/30/81
9,741.30 10/05/81
4,800.00 10/07/81
438.70 10/09/81
1,800.00 10/09/81
500.00 10/28/81
4,900.00 10/28/81
6,000.00 11/16/81
4,900.00 12/03/81
577.00 12/10/81
1,700.00 12/10/81
2,500.00 12/31/81
7,000.00 Total:
$ 86,226.59
*540 Date
Amount
01/08/82
$  3,712.80
01/27/82
5,000.00
02/01/82
5,100.00
03/04/82
2,700.00
03/08/82
6,400.00
03/24/82
4,800.00
03/29/82
1,200.00
04/17/82
1,600.00
04/19/82
4,908.75
04/17/82
7,099.00
05/01/82
6,400.00
05/14/82
10,000.00
05/22/82
8,000.00
Total:
$ 66,920.55
From January 1981 until June 1981, petitioners traveled from Minneapolis to Grove City almost every weekend. While in Grove City from Friday night through Sunday afternoon, petitioners visited GCF to oversee their business. Often during these trips Mrs. Bents reviewed GCF's books and bank records. Mrs. Bents would reconcile the checkbook for the GCF Account. In June 1981, Mrs. Bents left the employ of Westway and moved to Lake George, Minnesota, to begin operating a gift shop (the Wigwam) petitioners purchased the preceding year. Lake George is approximately 200 miles from Minneapolis and 155 miles from Grove City. Before Mrs. Bents moved to Lake George, petitioners hired Ervin Ertl (Mr. Ertl) to manage and do the bookkeeping for GCF. After he was hired, Mrs. Bents instructed Mr. Ertl regarding the business operations of GCF, its books and records, and Mr. Ertl's *541 responsibilities in those regards. During his tenure as GCF's bookkeeper, Mr. Ertl noticed certain checks coming to Mr. Bents from unexplained sources. These checks were actually from the fraudulent vendors involved in Mr. Bents' embezzlement scheme. Mr. Ertl discussed the receipt of these checks with Mr. Bents who told him the checks were the result of Mr. Bents "cashing in" other of his investments. Mr. Ertl also periodically discussed the receipt of these checks with Mrs. Bents. Mr. Ertl would casually mention to Mrs. Bents when another check of this nature was received and deposited into the GCF Account. In addition to embezzling money from Westway, Mr. Bents, as noted, also embezzled equipment and other merchandise by directing the vendor to make delivery to Mr. Bents rather than Westway. These deliveries were often made to GCF's address, or to petitioners' residence in Minneapolis. One of the fraudulent vendors involved in this type of arrangement was Donald Southerton (Southerton). Mrs. Bents was the only other person present at the time Southerton made several of these deliveries, and she was the person who acknowledged receipt of those deliveries. Sometimes Mr. *542 Bents arranged to have the merchandise or equipment picked up from the vendor instead of delivered. On one occasion, Mrs. Bents was the person who picked up from Southerton the equipment being embezzled. From June until October 1981, Mrs. Bents lived in Lake George and only rarely visited Minneapolis or Grove City. In October 1981, Mrs. Bents closed the Wigwam for the winter months and moved back to Minneapolis. From October 1981 until the spring of 1982, Mrs. Bents assisted in overseeing and managing GCF. In addition, Mrs. Bents spent part of her time during that interval attending to the needs of her and Mr. Bents' ailing mothers. In April 1982, Mrs. Bents returned to Lake George to operate the Wigwam. She remained in Lake George until October 1982 and returned to Minneapolis or Grove City only occasionally. In October 1982, Mrs. Bents again returned to Minneapolis and began working at a paint manufacturing plant. Mervin Langhum (Mr. Langhum) prepared petitioners' personal Federal income tax returns for the years 1975 through 1985, including the years in question. Mrs. Bents provided Mr. Langhum with the information used in preparing petitioners' tax returns. Mrs. Bents *543 summarized all of the information regarding the income and expenses of GCF, and certain rental properties petitioners owned, and provided that information to Mr. Langhum. For the years in dispute, Mr. Langhum dealt primarily with Mrs. Bents if questions arose in the preparation of petitioners' income tax returns. Mrs. Bents provided the answer to any questions Mr. Langhum raised. Westway learned of Mr. Bents' embezzlement, immediately dismissed Mr. Bents, and caused criminal charges to be brought against him in June of 1982. In June 1984, Mr. Bents was convicted of mail fraud for his embezzlement of Westway. Before Westway became aware of the embezzlement, Mrs. Bents knew of Mr. Bents' activities and begged him to stop for fear he would be caught. From 1978 until June 1982, Mr. Bents embezzled in excess of $ 400,000 from Westway. In 1981, Mr. Bents had additional taxable income of $ 135,000 from his embezzlement of Westway. Mr. Bents' 1981 embezzlement income was not reported on petitioners' income tax return for that year. In 1982, Mr. Bents had additional taxable income of $ 90,000 from his embezzlement of Westway. On their 1982 income tax return, petitioners reported *544 "miscellaneous income" of $ 74,322 partially reflecting the amount Mr. Bents embezzled from Westway during that year. Thus, petitioners failed to report $ 15,678 ($ 90,000 - $ 74,322) of Mr. Bents' embezzlement income for 1982. OPINION The first issue for decision is whether Mrs. Bents may avail herself of the protection provided by section 6013(e) to an innocent spouse. Generally, when a joint tax return is filed by a husband and wife, each is jointly and severally liable for any tax due with respect to that return. Sec. 6013(d)(3). However, under section 6013(e) one spouse may be relieved of such liability if: (1) a joint return was filed, sec. 6013(e)(1)(A); (2) there was a substantial understatement of tax attributable to a grossly erroneous item of the other spouse on such return, sec. 6013(e)(1)(B); (3) in signing the return the spouse seeking relief did not know, and had no reason to know, there was such a substantial understatement, sec. 6013(e)(1)(C); and (4) taking into account all the facts and circumstances, it is inequitable to hold the spouse seeking relief liable for the deficiency in tax for such taxable year attributable to such substantial understatement, sec. *545 6013(e)(1)(D). Mrs. Bents bears the burden of establishing each of these elements. ; ; ; Rule 142(a). Failing to establish any one of these requirements will prevent her from qualifying for relief under section 6013(e). , affg. ; , affg. on this issue and revg. on another issue a Memorandum Opinion of this Court. There is no dispute petitioners filed joint Federal income tax returns for the years in question, and both returns contained a "substantial understatement of tax attributable to a grossly erroneous item" of Mr. Bents. However, the parties disagree whether Mrs. Bents established the elements required under sections 6013(e)(1)(C) and 6013(e)(1)(D). We find Mrs. Bents knew or had reason to know of the substantial understatements of tax in the returns in issue. Accordingly, we need not address whether *546 it would be inequitable to hold Mrs. Bents liable for the deficiencies in and additions to tax in the years before us. Mrs. Bents was aware Mr. Bents' was embezzling money, goods, and services from Westway during the years in dispute. She begged Mr. Bents to stop his embezzling for fear he was going to get caught. During the years in dispute Mrs. Bents had unfettered access to the bank records for the GCF Account where almost all of Mr. Bents' embezzlement proceeds were deposited. Mrs. Bents should have noticed and inquired about those deposits during her own perusal of those records. Even if Mrs. Bents did not notice those deposits on her own accord, Mr. Ertl specifically brought those deposits to Mrs. Bents' attention when they periodically discussed the receipt and depositing of checks of that nature during the years in dispute. In addition to her knowledge of Mr. Bents' receipt of embezzled money from Westway, Mrs. Bents was also aware Mr. Bents was receiving substantial quantities of embezzled equipment and other merchandise from certain vendors such as Southerton. Upon minimal inquiry into the books and records of GCF, Mrs. Bents surely would have discovered Mr. Bents *547 never paid for those goods. Based on the record of this case, we find Mrs. Bents knew or had reason to know Mr. Bents received income from his embezzlement scheme in the years in dispute. Further, Mrs. Bents did not merely sign petitioners' income tax returns for the years at issue without any opportunity to review what was reported on those returns. Mrs. Bents actively participated in gathering the information for preparation of petitioners' returns and in answering the questions raised by the returns' preparer, Mr. Langhum. Clearly, Mrs. Bents knew or had reason to know none of Mr. Bents' embezzlement income was reflected on petitioners' 1981 tax return, and not all of Mr. Bents' embezzlement income was reported on petitioners' 1982 return. "Section 6013(e) is designed to protect the innocent, not the intentionally ignorant." . See also ; . Accordingly, we hold Mrs. Bents is not an innocent spouse entitled to the protection afforded by section 6013(e). The final issue for decision is whether Mrs. *548 Bents is subject to the addition to tax for negligence under section 6653(a)(1) and (2). The addition to tax imposed by that section may be avoided by a taxpayer if it is shown no part of any underpayment of income tax was due to the taxpayer's negligence or intentional disregard of rules and regulations in preparing a tax return. . If a taxpayer shows good faith reliance upon the advice of a competent and experienced accountant or attorney in the preparation of the return, the addition to tax for negligence is inapplicable. . To show good faith reliance, the taxpayer must establish the return preparer was supplied with all necessary information and the incorrect return was a result of the preparer's mistakes. (1972.) Mrs. Bents argues she was not negligent in the preparation of the returns in question as the returns were prepared by Mr. Langhum. We find petitioners failed to supply Mr. Langhum with correct information concerning the amount of Mr. Bents' embezzlement income in the years in *549 question. Accordingly, we find the underpayments in tax determined by respondent for the years in dispute were the result of petitioners' negligence, and not that of Mr. Langhum. Accordingly, we find Mrs. Bents is subject to the addition to tax under section 6653(a)(1) and 6653(a)(2) as determined by respondent. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure unless otherwise indicated.↩
*. 50 percent of the interest due on the deficiency.↩